QUACKENBUSH and others *vs.* LEONARD and others.

Where an application was made to the surveyor general for a grant of seve-ral lots of land for the mutual benefit of L., Q. and W. and the applicants entered into a written agreement between themselves by which it was stipulated that L. should pay to the state the purchase money for the lands as the same should become due and should obtain the patents, and that such purchase money and interest should be refunded to him out of the proceeds of the sales of the lands, and that he should release one-third of the land to each of his associates after the whole monies due to him should be paid; and the patents were afterwards issued to the executors and trustees of L. by whom the purchase money was paid; *Held,* that the executors and trustees of L. took the legal title to the land as trustees for all who were beneficially interested therein under the agreement. And Q. having transferred his interest in the lands to another person by an absolute conveyance, but in fact for the security of a debt of $1480, which was stated in a written defeasance which authorized the creditor to sell the lands to pay the debt, and the creditor afterwards sold his interest in the land to the executors and trustees of L. for $1000 only; *Held,* fur-ther, that the conveyance from Q. was only a mortgage, and that the ex-ecutors and trustees of L. were only entitled to hold it for the amount paid by them, and the interest thereon, and not for the whole $1480.

Trustees who buy in an outstanding incumbrance against the trust estate are only entitled to hold such incumbrance as a security for the amount actually paid by them therefor, with the interest thereon.

The principle of not giving effect to an agreement for the compounding of interest, which is to become due, is not based upon the usury laws; but is adopted as a rule of public policy, to prevent accumulations of compound interest in favor of creditors who neglect to collect their interest when it becomes due. And the principle upon which the rule is founded does not apply to a case where one man advances money to purchase property for the benefit of himself and another, to be refunded to him with compound interest, out of the proceeds of the sale of the property.

Where three persons agree to purchase lands for their joint benefit, and that one of them shall advance all the money upon the purchase, to be refunded out of the proceeds of the sale only, it is not a contract for the loan or for-bearance of money; and a stipulation that the one who advances the mo-ney shall receive more than one-third of the land or of the proceeds thereof, in consideration of making such advance, is not usurious.

October 19. THIS was an appeal from a decision and decree of the vice chancellor of the fourth circuit. The original bill was filed by Gerrit Quackenbush, in 1834, against the acting executrix and executors and trustees of Timothy Leonard,

deceased, and against J. B. Leonard, one of his heirs at law, for the specific performance of certain agreements, and to redeem such agreements from an assignment thereof to J. Williams, by way of mortgage or pledge for the security of a debt, under the following circumstances :

In January, 1814, Timothy Leonard, Gerrit Quackenbush and George Webster, entered into an agreement, under seal, reciting that Leonard had applied to the surveyor general for a grant of 62 lots of land in the Essex Tract, in the county of Essex, for the mutual benefit of the parties, and it was thereupon agreed between them that Leonard should advance and pay to the state all the consideration money for such lots, as the same should become due, and obtain patents as soon as might be after the payments were completed ; and Quackenbush agreed to transact all the business about the disposition and sale of the lands thus purchased, for their mutual benefit, without any other compensation than for his actual expenses, which were to be borne equally by the parties. And whenever the parties sold any of the lands, so much of the money arising from the sale as should be sufficient to reimburse Leonard for the moneys advanced, with interest thereon at seven per cent, to be compounded from and after the 25th of January, 1820, was to be paid to him. And it was further agreed, that if the patents for the lands should be issued to either in his own name, he would release one equal third part of such lands to each of the other proprietors, or his heirs or assigns, after the whole moneys due to them respectively should have been paid as provided for in that agreement.

And in February, 1814, the same parties entered into another agreement in writing, under their respective hands and seals, containing a recital of a similar application for a grant of 87 lots, in the North River Head Tract, in the same county, for their mutual benefit ; and whereby they agreed that Leonard should advance and pay the consideration money to the state and obtain a patent for those lots ; and that, as a premium for advancing the money, in addition to the principal and interest, he should be entitled

to seven of the lots, to be determined by lot, and the residue of the lands should be chargeable with the moneys advanced by him. And Quackenbush agreed to transact all the business about the disposition and sale of such lands, for their mutual benefit, without any compensation, except for his expenses, which were to be borne equally by such proprietors. This agreement also contained a provision, similar to the first, to reimburse Leonard for the monies advanced, and interest thereon, out of the purchase money arising from sales ; the interest to be compounded after the 24th of February, 1820. It also contained the like provision that if the patents should be issued to either in his own name, he should release one equal undivided third of the residue of the land to each of the others, exclusive of the seven lots to be drawn by Leonard, after the whole moneys due on the purchase of the lands should have been repaid to Leonard.

Soon after the making of these agreements, Leonard, who had contracted with the surveyor general for the lots in both agreements mentioned, died. And by his will, made in April, 1814, after making certain specific devises and bequests to his wife, he devised and bequeathed the residue of his real and personal estate to his executors in trust for the purposes of the will ; and authorized them, or a majority of them, to sell such parts of the real estate as they should deem proper and consider most beneficial for his estate. In 1815, under an act of the legislature authorizing the same, the acting executors and trustees received from the surveyor general certificates for the several lots mentioned in the two agreements, and gave to him their bonds for the payment of the unpaid purchase money then due the state. They afterwards paid such bonds, and obtained patents for the lands as such executors and trustees. The patent for three of the lots in the Essex Tract was obtained in 1816 ; and the patents for the residue of the lots in that tract, and for all the lots in the North River Head Tract, were obtained in February, 1819. Webster, in 1816, released and transferred to Quackenbush all his right and interest under the second

1841.

Quackenbush
v.
Leonard.

contract, to the 87 lots in the North River Head Tract. Quackenbush afterwards applied to one of the executors and professed a willingness to do all that he was bound to do under the contracts, in superintending the sales of the lands. But he had then failed, and was irresponsible, and the offer of his services was not accepted ; nor did the executors ever recognize him as having any interest in the lands, or any right to interfere in the sales thereof.

On the 25th of March, 1828, Quackenbush, by a conveyance which was absolute on its face, sold, transferred, and assigned to J. Williams, his executors, administrators and assigns, all his right, title, interest and claim in or to the sixty-two lots in the Essex tract, mentioned in the first agreement, describing therein the lots in that tract for which the patents had been obtained by the executors of Leonard. And he authorized him, or his personal representatives or assigns, to demand from Webster and the representatives of Leonard, or from either of them, a division of the 62 lots of land, according to the agreement, and after receiving a transfer of the one third part thereof, to hold the same to his own use, with power to bring suits either in his own name or in the name of the assignor ; and that all recoveries of damages which might be had or obtained against Webster or the representatives of Leonard by arbitration and award, judgment of court, decree in equity, or in any other manner arising out of the non-performance of the agreement, should be and they were thereby absolutely and irrevocably assigned and transferred to Williams and to his heirs and assigns, and also all his claims, and demands, either in law or equity, against Webster and the estate of Leonard, or to the 62 lots of ground, founded upon the agreement or arising out of the same. On the same day Quackenbush also, in the same manner, sold and conveyed to Williams all his right and interest in the 87 lots in the North River Head Tract, and in the second agreement, as well that which he was entitled to under such agreement, as that which he had acquired by the assignment of Webster to him. At the same time Williams

gave to Quackenbush an instrument, which stated that the two assignments were made for the sole purpose of securing the payment of $1480,50 with interest ; and he agreed that if Quackenbush paid him that amount and interest on or before the first of April then next, he, Williams, would re-assign to Quackenbush the agreements, covenants and lands therein mentioned, and all the interest he had acquired by such assignments ; but if the money was not paid, Williams was to be at liberty to sell and dispose of so much of the lands mentioned in the agreements as should be requisite, without any improper or unnecessary sacrifice of the same, to make the said sum of $1480,50 and interest, together with his reasonable expenses for selling and disposing of the same ; and was to re-assign the residue of such lands to Quackenbush.

Williams having waited about four years without receiving payment from Quackenbush, and having endeavored in vain to sell the contracts for the amount of the debt and interest, commenced a negotiation for the sale of them to the executors of Leonard ; in which negotiation the executors offered to assign to him all the right and interest of the estate of Leonard in the lands mentioned in both contracts, on being reimbursed the purchase money which had been paid therefor, with interest and taxes, which offer was declined by Williams ; and the executors finally offered him $1000 for the contracts. Quackenbush was informed of this offer by Williams, and told that he must either pay the debt or give him other security therefor, or that he should dispose of the agreements to the executors for the $1000 which had been offered.   But Quackenbush paid no attention to these repeated solicitations ; and when finally told by Williams that he should sell them for the $1000 so offered, unless he gave him other security, he replied that he could not do any better, and that if Williams must sell he must.   Williams thereupon sold and transferred to the executors of Leonard all his right and title to the two agreements and to the lands therein mentioned, for the $1000 ; and covenanted that he had full power and authority to sell and as-

sign and convey to them all the interest in the two agreements and the lots therein mentioned, which was or purported to be vested in him by the assignments thereof.

The executors sold part of the lands patented by the state ; and had contracted for the sale of other lots, and received a part of the purchase money on such contracts. But after applying all the monies received for lands sold or contracted for, there still remained due, for the original purchase money advanced by Leonard and his executors, on account of the two tracts and for taxes, including interest thereon according to the terms of the agreements, more than $30,000, at the time of putting in the answer of the defendants, in February, 1834.

The cause was heard and decided by the late vice chancellor of the fourth circuit in 1835. But before the entering of the decree upon that decision Quackenbush died. And, in 1839, the suit was revived in the names of his children and heirs, upon their petition ; but without prejudice to the right of the defendants to object that the personal representatives of the decedent were not made parties to the order of revival. A decree was thereupon entered, in conformity with the decision of the late vice chancellor, declaring that the complainants, as such children and heirs, were entitled to a specific performance of the first agreement, upon reimbursing the estate of Leonard, for all sums of money, expenses and advances, in pursuance of and according to said agreement, with interest, and to a specific performance of the second agreement upon similar terms ; that the assignment to Williams was a mortgage and that the complainants were entitled to redeem the same ; that on its appearing, upon an accounting before a master, that the estate of Leonard was reimbursed, with interest, for the monies advanced upon the first agreement, and also for the amount paid to Williams, the complainants would be entitled to a release of the equal undivided third part of the lands mentioned in the pleadings as having been purchased in pursuance of that agreement, and to a discharge and satisfaction of record of such mortgage ; that upon its appearing on such accounting that such estate was

reimbursed, with interest, for all sums of money advanced and expended according to the second agreement, and also the amount paid Williams for the conveyance of the mortgage, the complainants would be entitled to a release of the equal undivided two thirds of the lands mentioned in the pleadings as having been purchased in pursuance of that agreement, and also to a discharge of such mortgage ; that upon its appearing upon such accounting that the estate had been reimbursed, with interest, for all monies advanced upon both agreements taken together, and also the amount paid to Williams, the complainants would be entitled to a release of one third of the lands purchased in pursuance of the first, and of two thirds of the lands purchased in pursuance of the second agreement, and also to a discharge of the said mortgage ; that if it should appear upon such accounting that the estate was not reimbursed as aforesaid, the complainants would be entitled to a release of one third of the lands purchased in pursuance of the first, and of two thirds of the lands purchased in pursuance of the second agreement, and to a discharge and satisfaction of the mortgage, on such reimbursement being made, in the manner specified in such agreements as to the purchase money, and by an actual payment of the amount paid for the mortgage.

It was further ordered and decreed that it be referred to a master to take an account of all sales which had been made of any of the said lands and of all sums received upon contracts of sale, either for principal or interest, or which with due diligence might have been received, and the time of such receipt, &c. ; that in taking such account the master charge the defendants with all lumber taken from the premises by them, and with all losses which had happened by reason of the selling for inadequate prices, or to irresponsible persons, or at improper times, and for waste committed by persons who had entered under contracts with them, and that he make no allowance to them for negotiating sales of the land ; that the master take an account of what was due to the estate of Leonard for monies advanced and paid out for the lands in pursuance of and

according to the said two agreements, and also an account of what was due for the amount paid Williams for the mortgage; and reserving all further questions and directions until the coming in of the master's report, except that, after the execution of the releases of the undivided portions, the complainants might apply for partition upon the foot of the decree. From this decree, and every part thereof, the defendants appealed to the chancellor.

*D. Buel & S. Stevens,* for appellants. The agreements mentioned in the bill of the complainant, gave Quackenbush no title or interest in the lands purchased. If he acquired any right by virtue of said agreements, it was a mere chose in action, a mere personal claim or right of action against Mr. Leonard, in case he refused to comply with the agreements on his part. It necessarily follows that the mortgage by Quackenbush to Williams of his title and interest in said contracts, was a mortgage of a chattel. The right and title of Williams to the contracts, and to all the interest of Quackenbush therein, became complete and absolute in Williams before his sale and assignment to the defendants. The defendants acquired a perfect and absolute title to the contracts by their purchase from Williams. If Williams had not an absolute title before he sold, yet the sale itself being what he was expressly authorized to do by the mortgage, gave a perfect and absolute title to the purchaser. The sale alone was a valid foreclosure of all the rights of Quackenbush. The complainants are not entitled to a specific performance of the contracts. They were void, being without consideration. Equity will not compel a specific performance of such contracts, but will leave the party to such remedy as he can get at law. The defendants have not been reimbursed the purchase money, interest, and taxes. More than twenty years had elapsed before the commencement of this suit. The defendants have always refused to recognize Quackenbush's right to any interest in the lands. After such a great lapse of time, the complainants are not entitled to a specific performance,

*1841.*

Quackenbush
v.
Leonard.

1841.

Quackenbush
v.
Leonard.

but must be left to such remedy as they can obtain at law. A bill to redeem or compel a re-assignment of the contracts could not be maintained even against Williams, without averring a tender of the debt due and a refusal to accept it. Much less can such a bill be maintained against the assigns of Williams, without such tender. No tender is averred in the bill. The vice chancellor erred in not allowing the defendants compound interest on their advances ; and in not allowing them seven lots to be drawn for, &c., as provided for in the agreement for the eighty-seven lots ; and in limiting the amount to be paid to them on account of the assignment from Williams to $1000 ; and also in subjecting them to the losses.

*John Crary*, for the defendants. The property in question is real and not personal estate. The complainants, to obtain a decree for a specific performance, must show that they have an interest in the land. This the personal representatives could not do ; for the land, on the death of the ancestor, descended to the heir—and the suit is properly revived in the name of the heirs. The rights of the complainants are not altered by the purchase of the defendants from Colonel Williams ; for the defendants were trustees, and made so by Mr. Leonard's will, and by their own acts, as it respected Quackenbush. The contracts with Mr. Leonard gave Quackenbush the right to make the sales ; of which right the defendants have deprived him. The sale made to Williams operated as a mortgage, of which the defendants had notice, when they purchased of him ; and any person having an interest may redeem.

THE CHANCELLOR. I can see no absolute necessity in this case for reviving the suit in the name of the personal representative of Quackenbush, as well as of his heirs at law. If the original complainant was entitled to a decree for a conveyance of any part of the lands purchased under the agreements, it was such an equitable interest in real estate as would descend to his heirs at law under the provisions of the revised

statutes; (1 *R. S.* 751, § 1, 21, 27;) and they alone would have the right to revive the suit as to any of the lands which remained unsold at the time of his death, in 1835. It is true the personal representative would be entitled to his share of the purchase money of lands which had then been sold, if the estate of Leonard had been more than reimbursed for the advances and expenditures. But the only effect of a neglect to revive the suit in the name of the representative who would be entitled to such surplus, is that no decree can be made against the appellants for the payment of any surplus. And if the defendants wished to have the personal representive before the court upon the taking of the account which was necessary to be taken for another purpose, so as to preclude him from questioning the correctness of that account afterwards, they should have proceeded to revive the suit against him; instead of objecting to the revival by the heirs at law of that part of the suit in which they claimed an interest as such heirs. (*See Hoffman* v. *Tredwell,* 6 *Paige's Rep.* 308.) If the heirs, as such, had no interest, the decree must of course be reversed and the bill dismissed as to them.

The principal and most important question in the case is whether all the interest of Quackenbush under the two agreements of 1814, and to the lands which had been purchased from the state as contemplated by those agreements, was extinguished by the sale to the executors and trustees of Leonard, by Williams, in 1832; or whether by virtue of such sale and assignment they merely acquired an interest, as the assignees of a mortgage, subject to the right of Quackenbush to redeem from them by paying the amount due upon the mortgage. Even if the conclusion at which the vice chancellor arrived upon that question was correct, however, which I shall presently consider, the decree appealed from is erroneous in some of the particulars referred to by the counsel upon the argument of this appeal.

By the terms of his conveyance to the executors, Williams sold, assigned and conveyed to them all his

1841.

Quackenbush
v.
Leonard.

right, title and interest in the two agreements, and in and to the lands therein mentioned; with a covenant that he had full power to sell, assign and convey to them all the interest in such agreements, and in the lots therein mentioned, which was or which purported to be vested in him by the assignments from Quackenbush. It is clear, therefore, that if they did not acquire an absolute title to all the interest which Quackenbush had at the time he assigned to Williams, they would, if mere strangers, have acquired all the interest of Williams as a mortgagee. And the heirs of Quackenbush, in that case, upon a bill filed by him to redeem, must have paid to the appellants the whole amount due to Williams, upon the mortgage, at the time of his assignment thereof to them, in 1832, and the interest which had since accrued; and not merely the $1000 which they paid to him for that assignment. But here the appellants are met by the rule of equity that a trustee buying in a debt or incumbrance against the estate held by him in trust, can only be allowed the amount actually paid therefor, with interest thereon. (*Lewin's Law of Trustees,* 289. *Darcy* v. *Hall,* 1 *Vern.* 49.) I cannot, therefore, say that the decree is erroneous in not allowing the appellants the full amount due upon the mortgage.

From the minutes of the decree it is probable that the vice chancellor intended that the estate of Leonard should be reimbursed the interest as well as the purchase money advanced for the lands specified in each agreement, according to the agreements respectively; that is, by computing simple interest on the advances as they were made from time to time, until the expiration of six years from the dates of the respective agreements, and by compounding the interest annually after that period. But as the decree is drawn up, it is doubtful whether such can be its construction; and if not, the decree is erroneous in this respect. Although, in an ordinary loan of money, courts do not give effect to a stipulation for the future compounding of interest which shall not be paid at the time agreed upon by the parties, there is no rule of law, or principle of public policy,

which forbids its allowance in a case like the present. Here the parties enter into contracts respecting the purchase of lands for their mutual benefit ; and providing for the distribution of such lands, or the proceeds thereof, among themselves, after the purchase money and other necessary expenses of the sales, &c. shall have been paid. It was as proper, therefore, for Leonard to insist upon a stipulation that if sufficient was not realized from the sales of land to refund the monies advanced by him with simple interest at the end of six years, he should be entitled to a further allowance, by way of compound interest, after that period, as it was that he should agree to allow Quackenbush all actual expenses he might incur in the disposition and sale of the lands for their common benefit. The principle of not giving effect to a stipulation for the compounding of future interest upon a debt does not arise from the usury laws. It is merely adopted as a rule of public policy, to prevent an accumulation of compound interest in favor of negligent creditors, who do not collect their interest when it becomes due ; which negligence is found, in the end, to be an injury rather than a benefit to the debtor. This principle of public policy, therefore, does not apply to contracts like those under consideration, where the person who advanced the whole money to purchase lands for the mutual benefit of himself and others had no right to demand payment of either interest or principal until the same could be realized out of the proceeds of the lands when sold.

The decree is also erroneous in declaring the complainants entitled to two thirds of the whole eighty-seven lots in the North River Head Tract, upon the estate of Leonard being reimbursed the monies advanced. By the terms of the agreement those lots were not to be divided equally between the parties ; but Leonard was entitled to seven lots, to be drawn for by him in the first instance, and the remaining eighty, only, were to be divided between him and Quackenbush and Webster after he had been remunerated for his advances out of the proceeds of the sales. A stipulation of that kind, in such an agreement, was not

usurious. For it was not a contract for the loan or forbearance of money, either within the letter or the spirit of the usury laws; there being no agreement on the part of Quackenbush or Webster to refund any part of the purchase money advanced by Leonard, if the lands should not sell for enough to reimburse him for the purchase money advanced, and interest thereon. Indeed the bill itself proceeds upon the ground that the estate of Leonard is entitled to remuneration out of the proceeds of the lands only, if I rightly understand it. And if it were otherwise, the decree should direct a sale of so much of the land as might be necessary to reimburse the estate for the advances, in case it should appear that it had not already been reimbursed out of the proceeds of the lands sold.

Again; if the complainants were entitled to redeem the lands from the sale by Williams, provision should have been made in the decree for an allowance to the defendants, upon the taking of the account, for the monies paid by them for taxes upon the lands; as that was a necessary expenditure for the benefit of all parties interested in such lands, and should be first paid out of the proceeds of the lands sold by the executors and trustees of Leonard.

It does not appear to have been the intention of the parties to these agreements to give to Quackenbush the exclusive right to make sales of the lands which were to be purchased from the state, or to secure to him any right or benefit by that clause in which he agrees to transact all the business about the disposition and sale of the lands without any compensation, other than his actual expenses while engaged in that business. The object of that clause evidently was to secure to the other parties the right to such gratuitous services if they thought fit to require them. The executors of Leonard, therefore, had a right to waive a stipulation in the agreements which was inserted therein merely for the benefit of their testator, if they thought fit to perform the same services themselves, gratuitously. But as it appears by the answer that Quackenbush was ready and willing to perform the services, which he was to do gra-

tuitously, his interest in the land ought not to be charged with any expenditure for making sales of the land, during his life, with which it would not have been charged if he had negotiated the sales personally. And no allowance for expenses subsequent to his death should have been made, except such as were absolutely necessary to carry the agreements into effect, by selling so much of the land as was necessary to reimburse the estate of Leonard for his advances and interest, in addition to the taxes on the land. The necessary expences of surveys, conveyances, &c., which must have been a common charge upon the proceeds of the sales even if Quackenbush had negotiated the sales personally, should have been allowed to the appellants, in taking the accounts. They should also be allowed the additional expense, if any, which they have incurred since his death, in negotiating sales and collecting the purchase monies ; so far as such sales may have been necessary to reimburse the estate, according to the spirit of the original agreements. And they ought not to have been charged for waste committed on the lands by purchasers, or for the irresponsibility of such purchasers, in cases where sales were made in the usual way of selling such lands, and to persons who at the time of the sales were apparently responsible. But if they sold lands below their fair value, in consequence of selling at improper times, or of their neglect to make the proper inquiries as to the real value of the lands sold, it was proper to charge them with the true value.

The right of the complainants to redeem from the sale made by Williams, depends to a great degree upon the nature of the interest which Quackenbush was entitled to under the two agreements with Leonard and Webster. For if he had an equitable right to one third of the lands in both tracts, under the original agreements, and acquired a similar interest in another third of the North River Head Tract by the subsequent conveyance from Webster, subject only to the claim of Leonard's estate for his portion of the original purchase money, then the executors, at the time of their purchase from Williams, held the legal title

to his portion of the land as his trustees; with the right to sell so much of it only as was necessary to reimburse the estate for its advances, &c. And in that case the rule of equity, which I have before referred to, would have deprived them of the power of buying in the trust estate for their own benefit; even if Williams had the power to sell and convey an absolute interest to a stranger without a foreclosure. On the contrary, if the appellants' counsel are right in supposing that the agreements of 1814 gave to Quackenbush a mere personal claim, upon Leonard, or his estate, to recover damages for the non-performance of his part of the agreement, Williams had an unquestionable right to sell that claim, according to the terms of the defeasance, after reasonable notice to Quackenbush of his intention to do so if his debt was not paid; without the delay and expense of a formal foreclosure by a decree in equity, or of advertising for six months under the statute. It is unnecessary, therefore, to decide the question, which was raised upon the hearing of this appeal, whether a formal foreclosure is necessary to bar the equity of redemption of the mortgagor upon the pledge or mortgage of a mere contract for the purchase of real estate, where the mortgagee is authorized by the mortgagor to sell such contract for the best price he can obtain for it if the debt is not paid.

Upon a careful examination of the terms of the agreements of 1814, I think it is evident the parties intended that each should have an equitable estate and interest in his portion of the lands to be purchased from the state; although they appear to have contemplated that the certificates of purchase, and even the patents for the lands, might be taken out in the name of Leonard, who was to make the necessary advances. By the recital in each agreement it appears, that an application had already been made to the surveyor general for the purchase of the particular lots in each tract, for the joint benefit of the parties, at the time of the execution of those agreements respectively. And probably the eighth of the purchase money had been paid, as required by the statute, upon

making such application. (1 *R. L. of* 1813, *p.* 297, § 21.)

Indeed it appears from the schedules annexed to the answer that the first payment in each case was made on the day of the date of the agreement. The payment of that instalment, and the execution of the agreements respectively, gave to each of the parties to the same an equitable interest in the specific lands which had thus been applied for. And when the executors afterwards obtained the certificates, under the act of February 1816, they held them for the benefit of Quackenbush and Webster, as well as of the estate of Leonard. The legal title which was afterwards transferred to such executors by the patents, therefore, was held by them as trustees for all who were then beneficially interested in such lands, according to their respective rights and interests under the agreements and the assignment from Webster. I therefore conclude that the vice chancellor was right in declaring that the complainants were entitled to redeem from the mortgage given to Williams, and to have a conveyance of the legal interest in their share of the two tracts, exclusive of the seven lots in the North River Head Tract, when they should have so redeemed, and when the estate of Leonard should have been reimbursed for its advances.

The appellants, however, are entitled to have the usual provision, which is always inserted in a decree to redeem, that the redemption money shall be paid within a certain specified time after the amount due shall have been ascertained, or that the complainants' bill be dismissed with costs; which dismissal of the bill is a perpetual bar to any future claim of an equity of redemption in the mortgaged premises. The usual time allowed for that purpose is six months. Upon the coming in and confirmation of the master's report, therefore, if it does not appear that the $1000 paid for the purchase from Williams, with the interest thereon, has been fully satisfied, in addition to the reimbursement of the estate of Leonard for its advances, &c. and all other charges and expenses, for taxes and otherwise, which are properly payable out of the proceeds of the

sales, the complainants must, within six months, pay the amount reported due upon the mortgage, with interest thereon from the date of the master's report, to the executors or their solicitor, for the benefit of the estate of Leonard, or the bill must be dismissed with costs.

The master to whom the case is referred must designate, in the manner specified in the second agreement, seven of the lots in the North River Head Tract, to be held by the trustees for the exclusive benefit of the estate of Leonard, and must specify such lots in a separate report; to the end that such report may be filed and confirmed without waiting for the coming in of his general report. And if any of the lots thus drawn have been already sold by the executors, the respondents are not to be charged, in the account, for the value of such lots, or for the purchase money received therefor; nor are they to be credited for taxes or other expenses upon any of the seven lots thus drawn by them.

The proper mode of stating the accounts, under the decree, exclusive of what was paid upon the purchase from Williams, will be to compute the simple interest on the receipts and disbursements, in relation to the lands specified in each agreement separately, until the expiration of the six years from the date of the contract, including monies received for lands sold, &c. and then to make annual rests, for the purpose of giving the estate compound interest upon its advances, until the debt due to the estate on account of each agreement is extinguished; and after that, to allow interest on the receipts and disbursements as shall be just.

The allegation in the bill that Webster had conveyed or released his interest in the Essex tract to the trustees, is denied in the answer, and is not sustained by proof. He or his representatives are necessary parties to a suit for the partition of that tract. It is also doubtful whether the heirs at law of Leonard ought not to be made parties to a suit for that purpose, under the special provisions of his will and the operation of the revised statutes upon the

estate of the trustees. The provision in the decree rela- 1841.
tive to the partition of the estate is therefore erroneous.

The decree appealed from must be modified in conformi- Brown
ty with this opinion. And neither party is to have costs <span>v.</span> Southworth.
as against the other upon the appeal. Some of the execu-
tors having died pending the appeal, the decree must be
entered *nunc pro tunc* as of the time of the argument. And
an order may now be entered, suggesting the death of such
executors, and directing the suit to proceed against the sur-
viving executrix and executor of the estate of Leonard.(*a*)

(*a*) The decree of the chancellor in this case was affirmed, upon appeal to
the court for the correction of errors, in December, 1842.