ISAAC M. BRAGG, *in Equity, versus* EPHRAIM PAULK *& als.*

A bond for the payment of money, conditioned to be void on the conveyance of land, is treated in equity as an agreement to convey, and will be specifically enforced against the obligor.

When the grantee of such obligor takes a conveyance of the land thus agreed to be conveyed, with notice, he will be regarded as holding the same in trust for such obligee.

It seems that the assignees of an insolvent debtor, receiving a conveyance of his "right, title and interest" in land, of which he had previously given a bond to convey upon the performance of certain conditions therein expressed, will hold the estate conveyed, subject to the prior equities of the obligee in such bond.

The declaration of a trust may be contained in an indenture between parties, in the recitals of a deed, the conditions of a bond or other instrument under seal.

A declaration, in writing, under seal, that A. has purchased a tract of land, subject to mortgage for the joint and equal benefit of himself and B.; that he has advanced the purchase money for and taken a conveyance to himself of the same as security for his advances and interest therein; that he will apply all the profits of the same to the payment of his advances and of the mortgage on the land; and that upon payment of the same he will convey to B. half of the land thus purchased, and equally divide the profits, if any, with him, is a declaration of trust.

These facts appearing in the conditions of a bond between the parties, constitute a declaration of trust, in which the obligor is *trustee* and the obligee the *cestui que trust.*

Such bond is a declaration of trust within the provisions of the R. S. of Maine, c. 91, § 11.

By R. S., c. 91, § 33, it is to be recorded in the registry of deeds of the district where the land is; and the recording of it is made "equal to actual notice thereof to all persons claiming under a conveyance, attachment or execution, made or levied after such recording."

BILL IN EQUITY.

The plaintiff alleged in his bill, that he made a bargain

with one Asa W. Babcock for the purchase of a certain pro-
portion of a valuable township of land; that being unable to
make the cash payment required, he applied to the defendant
Paulk, and agreed with him to make the payment and take
the conveyance in his own name, for the mutual and equal
benefit of both, the said defendant giving the plaintiff a bond*

* The bond referred to was as follows : —

"*Know all men by these presents*, That I, Ephraim Paulk of Bangor, am holden
and stand firmly bound and obliged unto Isaac M. Bragg of said Bangor, in
the full and just sum of five thousand dollars, to be paid unto the said Bragg,
his executors, administrators, or assigns : to the which payment, well and
truly to be made, I bind myself, my heirs, executors and administrators, firmly
by these presents. Sealed with my seal. Dated the eighteenth day of Au-
gust, in the year of our Lord one thousand eight hundred and fifty-two.

" The condition of this obligation is such, that whereas, I have this day re-
ceived from A. W. Babcock, a deed of one-fourth part of seven undivided
eighth parts of township number one, in the third range, west from the east
line of the State, in the county of Aroostook ; said seven-eighths being subject
to a mortgage from said Babcock, this day given to John Huckins ; and I have
paid to said Babcock for such conveyance, the sum of eleven hundred and
seventy-three dollars ; all which has been done by me for the equal benefit of
myself and said Bragg. Now if said Bragg shall repay to me one half of said
sum so paid by me, with interest from this time, then I am to convey to him
one-half part of said undivided fourth of said seven-eighths of said township,
subject to the said mortgage, by good quitclaim deed, free from incumbrances
under me, to convey as good a title as I have received.

" All the stumpage received on said seven-eighth parts of said township, is
to be appropriated to the payment of said mortgage ; and after that is paid, to
the payment of the money advanced by me as aforesaid, and interest so far as
one-quarter part thereof is concerned, and necessary expenses to be paid by
me, and the remainder received for such fourth part, to be equally divided
between said Bragg or assigns and myself. As soon as I shall, from stumpage
or otherwise, receive as aforesaid the sum due to me from said Bragg, for his
one-half of said fourth part, then I am to make a conveyance thereof as afore-
said to him or assigns.

" Now if I shall well and truly perform my part of the foregoing agreement,
according to its true intent and meaning, upon the previous performance on
the part of said Bragg and assigns, of his part thereof, as therein expressed,
then this obligation to be null and void, otherwise to remain in full force and
virtue. . "E. Paulk. [L. S.]

" Signed, sealed, and delivered in presence of Albert W. Paine."

"Penobscot, ss. — September, 1852. — Personally appeared Ephraim Paulk,
and acknowledged the foregoing instrument by him signed to be his free act
and deed. Before me, "Albert W. Paine, Justice of the Peace."

conditioned to convey one-half the said interest to him, upon the payment of one-half of the money which the defendant had advanced therefor.   The plaintiff also alleged that he had performed all that was agreed to be done and performed by him, and therefore prayed for a decree of the Court that his share of the premises be conveyed to him.   Several parties, beside Paulk, were made defendants in the bill, in consequence of conveyances, &c., subsequently made by him to those parties, but it is not necessary to the understanding of the case to give a history of those transactions.   The material facts are quite fully stated in the opinion of the Court.

The defendant filed a general demurrer to the bill, and, upon the issues thus raised, the cause was heard.

*A. W. Paine*, for plaintiff.

I. That plaintiff is entitled to a decree in his favor, as against Paulk, the principal defendant, will not be questioned. A perfectly clear case is made out against him.   But as he does not hold the title, it becomes a question of first importance whether or not the holders of the title are not equally obliged to grant the relief prayed for.

The case is one not only "of specific performance," but also of "trust."   The whole proceedings, as well as the language of the bond "A," very clearly shows this.   He acknowledges by his contract that "all has been done for the equal benefit of said Bragg and myself."

The title, then, of the whole estate, is to be regarded as the equal property of the two; Paulk holding the legal title of Bragg's half in trust, to be conveyed to him upon the payment of one-half of the comparatively small sum of $1173.

The tender of that sum, as alleged, perfects his claim under both clauses.

II. Are, or not, Winn and Boynton and Bradley, the other defendants, equally holden to make the conveyance as prayed for ?

The facts presented, as bearing upon them, are simply, that after the bond "A" was given, Bragg immediately took charge of the whole property thus owned in common by himself and

Paulk; took the general oversight of it; permitted teams and collected stumpages, and from the avails paid off the incumbrances which they had assumed. He was, therefore, as far as the nature of the estate would admit, in possession of the premises.

He had also caused his bond to be recorded in the proper registry of deeds.

And had also paid out of his own funds his proportion of the necessary funds to meet a payment falling due for the land.

While matters are thus, Paulk fails; and to secure Winn, one of his creditors, he conveys to him, by absolute deed, all his interest in real estate, and, by mortgage, all his personal estate, the deeds being all made for the collateral purpose of securing his said indebtedness. The deeds embraced Bragg's portion of the land in question. Winn then fails.

Boynton & Co., the common creditors of both Winn and Paulk, then take a deed of all the same property to secure them, and give back to Paulk a bond conditioned for re-conveyance of the property to him when all Paulk's indebtedness to them both is paid.

The amount of property thus held by these two creditors, exceeds the indebtedness of Paulk to them, besides the portion claimed by Bragg.

1. By the terms of the bond, Paulk was the trustee of Bragg, holding his half of the premises for him. And in such case, the latter is regarded in equity as the owner, Paulk being merely the mortgagee, holding the land as security for the amount due him. 2 Story's Eq. § 790; *Van Wych* v. *Allyn*, 6 Barb. 507; *Borne* v. *Childs*, 10 Pet. 180.

Our own Court has also recognized this principle, regarding the bond for conveyance, not merely as an executory, but in equity as an executed instrument, and the obligee as the true owner. *Linscott* v. *Buck*, 33 Maine, 530.

Bragg, then, is to be regarded here as the real owner of the land in controversy, holding under a title prior, and con-

sequently superior to that of either of the defendants besides
Paulk.    *Malin* v. *Malin*, 1 Wend. 625.

The deeds from Paulk to Winn, and from Winn to Boyn-
ton & Co., are both of "his right, title and interest, alone."
It could have no other effect than to convey that interest,
though the legal title in form might pass.    6 Barb. 481.

But a deed of all one's "right, title and interest," does not
bar one who has title to any portion of the land previously
acquired, from asserting his claim as superior to the claim
under such deed.    *Adams* v. *Cuddy*, 13 Pick. 460; *Oliver* v.
*Platt*, 3 How. 333, 410.

Without proceeding further, the view now taken, and the
authorities cited, would entitle the plaintiff to the remedy
which he seeks.

In *Oliver* v. *Platt*, 3 How. 333 or 410, the S. C. of U. S.
went so far as to decide that "a purchaser by quitclaim, with-
out any covenant of warranty, is not entitled to protection,
as a purchaser for valuable consideration, without notice, and
he takes only what the vendor could lawfully convey."

2. The conveyance to Winn, and from Winn to Boynton
& Co., were both for collateral purposes, to secure them for
Paulk's indebtedness.    This collateral holding was evidenced
by writing, and thus free from any objection on the score of
the statute of frauds.

The deeds, then, are both to be regarded in equity as mort-
gages.    Such is the express decision of this Court.    *Howe* v.
*Russell*, 36 Maine, 115.

And the Court will, in such case, compel both the mort-
gager and the mortgagee to unite in conveying the title to one
who has an interest subordinate only to this title.    *Howe* v.
*Russell*, 36 Maine, 115.

And in all such cases, if the trustee convey the land to
another, who does not pay an adequate consideration therefor,
he has no pretension to retain more than is necessary for his
own indemnity.    *Hanly* v. *Sprague*, 20 Maine, 431.

Here the fact is found, that no part of the premises here
claimed by plaintiff, is necessary for defendants' indemnity,

inasmuch as they have a superabundance of property in their hands to satisfy all their claims against Paulk.

The defendants Winn and Boynton & Co., then, are here held to make the conveyance as prayed for.

3. Where a specific performance of a contract respecting land will be decreed between the parties to it, it will also be decreed between all persons claiming under them, unless other controlling equities are interposed. 2 Story's Eq. Jur. § 788.

Regarding, too, the plaintiff as the real owner of the property held in trust by Paulk for him, as the authorities all do regard him, what claim have Winn and Boynton & Co. to hold the estate against plaintiff's claim. This they cannot do, except by reason of a superior equity, arising from the conveyance of Paulk to Winn, and Winn to Boynton & Co.

But in order that a purchaser may hold an estate against the equitable claim of another, it is requisite that he should purchase for a valuable consideration, and without notice of such equity.

This rule is so well illustrated, and the principle so plainly expounded, in the case of *Bassett* v. *Norworthy*, in White and Tudor's Leading Cases in Equity, vol. 2, part 1, page 65, that reference is here made to that case for a full exposition of the subject and collation of the authorities.

As to notice, actual notice is not necessary to be proved, but the purchaser is held to make all reasonable inquiries and searches for the true state of the title; and he is bound by a knowledge of all the facts which such an investigation would necessarily bring to his knowledge. He must believe the title good, and this belief must rest on such facts as a reasonable inquiry into the title would have disclosed. Ibid, p. 96; 7 Pet. 252, 271; *Chapin* v. *Brown*, 6 Johns. Ch. 398, 402–3; 17 Ves. 483, and cases cited.

Here such an examination into the title in the only proper place, the public registry, could have brought to his notice the recorded bond under which plaintiff claims, the same having been recorded on the 11th September, 1852.

Such reasonable inquiry would also have disclosed the fact,

that Bragg was in actual possession of the land, cutting the timber, and exercising all the usual acts of owership over it.

These both would have been such notice to him as would take away all claim to any equity to be acquired from Paulk's deed. *Le Neve* v. *Le Neve*, 2 White and Tudor's Leading Cases, 122.

But not only must the party claiming show himself as having had no notice of plaintiff's equity, but he must also be a purchaser for a valuable consideration.

What is such valuable consideration, and who such purchaser? The case of *Bassett* v. *Norworthy*, already cited, is full of authority.

A purchaser for the consideration of a prior indebtedness is not to be regarded as one who can claim such exemption. Page 107 of that case, and page 104, *Coddington* v. *Bay*, 20 Johns. 637.

Much less is a mortgagee to be regarded as such a purchaser, who has taken a mortgage to secure such prior indebtedness. *Dickerson* v. *Tillinghast*, 4 Paige, 215; *Vattice* v. *Hinde*, 7 Pet. 252.

And the consideration must be actually paid, not merely secured. *Bassett* v. *Norworthy*, pp. 113, 93; *Jackson* v. *Cadwell*, 1 Cow. 622.

And ignorance of the plaintiff's equity must exist, not only at the time of the purchase, but also at the time of payment. If, in the *interim* between the purchase and the payment, such notice comes to him, he is bound by it, and cannot claim protection. *Bassett* v. *Norworthy*, p. 114; *Wormly* v. *Wormly*, 8 Wheat. 421; *Christie* v. *Bishop*, 1 Bar. Ch. 105.

Though such purchaser will be protected for any improvements and payments made in the meantime, before notice is received. *Bassett* v. *Norworthy*, p. 103.

But so far as the contract or conveyance is not executed, the vendee will hold his rights unaffected by any such intermediate conveyance. *Bassett* v. *Norworthy*, 114.

In the case at bar, the sole consideration was the prior indebtedness of Paulk to Winn and Boynton & Co.; and the conveyance was, at most, only a mortgage to secure a debt

for the security of which, the party had other and abundant security.

No act had been done, no money advanced, improvements made, or other change in their condition taken place in reliance upon this security.

Under these circumstances, they have no claim to resist the plain equity which plaintiff has for relief as prayed for. The case of *Buck* v. *Pike*, 2 Far. 1, is much less strong.

III. The claim of the assignees of Paulk, under the general assignment made by him for the benefit of creditors, cannot impose any objection to the allowance of plaintiff's equity here.

The argument and authorities adduced apply with still greater force to them than to the other defendants.

The assignment is of all his, Paulk's, estate, including his interest only, of course, in the real estate in question.

The assignees then took nothing by the deed in the estate in question. A principle directly settled in *McIon* v. *Kyn*, 3 Wheat. 53; *Baker* v. *Vining*, 30 Maine, 121.

*J. A. Peters*, for defendants.

Complainant does not allege fraud, nor will he urge any, unless it may be against Paulk alone. The land was first conveyed to Winn and by Winn to Boynton and Bradley. It is not alleged, that Winn had any knowledge of the relations of Paulk and Bragg, or that Boynton and Bradley had; Winn and Boynton and Bradley therefore, were strangers to the trust; and if they are not in equity bound, the assignees cannot be bound, I mean the other parties defendant.

These parties, therefore, being strangers to the trust, are not answerable to this bill. They have been guilty of no fraud, and holding the conveyance without notice of the trust, cannot be disturbed. I can find no authority to determine that it makes any difference whether the conveyance was to secure an old debt or a new one. The language of the books is, that a grantee is only bound to convey when at the time of the transfer he had a knowledge of the trust. The kind of transfer does not seem to enter into the considera-

tion at all. *Foss* v. *Haynes*, 31 Maine, 81; 2 Story's Eq. 784; Adams' Equity, 81. In the lâst named authority the phrase "conveyed" is used. In all cases where a trustee conveys to a person without prior notice the conveyance stands; no qualification is used whether it is a conveyance in mortgage upon condition or absolute.

I take it, that in any case, a person may look only to the record, and if he has no other knowledge, and if the conveyance would have been good upon the records, the conveyance will stand. In this case there was no fraud and no notice. The record shows us rightfully in title. The plaintiff alleges, that Boynton and Bradley and Winn have other security enough. An answer to that is, let him tender us a clearance from all our liability and for him to take all the property. And again, who can tell how many claims may arise similar to this of Mr. Bragg.

Complainant places force upon the fact, that Paulk only conveyed his right, title and interest; his legal right and interest was the whole land. His title certainly was. There is no pretence that Bragg owned any part of the title. That is just what he is now seeking to obtain. If Paulk, by conveying in the mode he did, did not transfer what he held in trust, why this complaint in equity ? If it did not pass, we have not got it.

Where a person relies on a bond, he relies on a merely personal obligation, and if in the course of ordinary business Mr. Bragg has only Paulk's obligation, he has as much as he ever had and just what he started with and was willing to rely on.

Appleton, J.—It is well settled that this Court has power to decree the specific performance of a bond with a penalty. "Agreement to convey land may be enforced in chancery," remarks Parker, J., in *Newton* v. *Swazey*, 8 N. H., 12, "although it be secured by a penalty, and be contained in the condition of a bond." The same doctrine has been fully affirmed in *Ensign* v. *Kellogg*, 4 Pick. 1. In *Dooley* v. *Wat-*

*son,* 1 Gray, 414, SHAW, C. J., in delivering the opinion of the Court, says, "courts of equity have long since overruled the doctrine, that a bond for the payment of money, conditioned to be void on the conveyance of land, is to be treated as a mere agreement to pay money; when the penalty appears to be intended merely as security for the performance of the agreement, the principal object of the parties will be carried out." "In applications for the specific performance of agreements," says CATON, J., in *Broadwell* v. *Broadwell,* 1 Gilman, 599, "it is immaterial what the form of the instrument is, whether it be a covenant in a penal bond with a condition to do the thing. The great and leading inquiry is, what did the parties expect would be done? what was the moving motive of the transaction? what is the real substance of the agreement and primary object of the parties? When that is ascertained, the Court will enforce its execution." The form of the instrument by which the agreement of the parties is evidenced is wholly immaterial. "Thus, if a contract only appears in the condition of a bond, secured by a penalty, the Court will act upon it as an agreement, and will not suffer the party to escape from a specific performance by offering to pay the penalty." 2 Story's Eq. § § 715, 750.

In contracts of this description, a trust is held to attach to the land, and to bind every subsequent vendee purchasing with notice of its existence. *Linscott* v. *Buck,* 33 Maine, 530.

When a trust is in writing, the law requires no particular form of words by which it is to be proved. The letters, notes, and memoranda, in writing, of the party to be charged, and his answers to a bill in equity, have been regarded as affording sufficient foundation for the action of the Court. *Buck* v. *Swazey,* 35 Maine, 41 ; *Pratt* v. *Thornton,* 28 Maine, 360.

The original purchase was made by the plaintiff and Paulk, on joint account, the first payment having been advanced by the latter. But "if a joint purchase is made in the name of one of the purchasers, and the other pays or secures his share of the purchase money, he will be entitled to his share as a resulting trust." 2 Story's Eq. § 1206. So when P. bought

land, and took a deed in the name of H., and H. advanced the purchase money and took the notes of P. for the same, and agreed to convey the land to P. on being paid the money advanced, and interest, it was held that the money advanced by H. might be regarded as a loan to P., and the land, as purchased with the money of P., so as to raise a resulting trust. *Page* v. *Page*, 8 N. H., 187. If real estate is purchased for partnership purposes, and on partnership account, it is immaterial in the view of a court of equity in whose name the conveyance is taken, whether in the name of one partner or in that of all. In all these cases, let the legal title be vested in whom it may, it is in equity deemed partnership property, and the partners are deemed *cestui que trusts* thereof. A purchaser of property thus situated, with notice of the trust, takes it *cum onere* like any other purchaser of a trust estate, and is bound by the trust. 2 Story's Eq. § 1206.

Trusts are either express or resulting by implication of law. The former must be proved by some written instrument, the latter need not be.

It is enacted by R. S., c. 91, § 11, that "there can be no trust concerning lands, except trusts arising or resulting by implication of law, unless *created* or *declared* by some writing signed by the party or his attorney."

The agreement by which the trust is established, may be made before the purchase of the estate to which it attaches, as in *Quackenbush* v. *Leonard*, 9 Paige, 334, where three individuals entered into a written agreement for the purchase of certain lots of land, the purchase money for which was advanced by one of the number to whom the conveyance of the same was made. It was there held, that the conveyance was *in trust* for those beneficially interested in the agreement, and that a court of equity would enforce and protect the rights of the several parties to the original agreement.

But it is entirely immaterial whether the trust is evidenced by a writing made before or after the purchase. The written declaration of a trust, parol in its origin, is as valid as if its creation had been by writing.

In the present case, the existence of the trust, and the price for which the property was purchased, and for whose benefit the purchase was made, are abundantly declared in the bond or contract signed by Paulk, the specific performance of which is sought to be enforced by this bill. The condition of the bond is as follows:—"That whereas I have this day received from A. W. Babcock a deed of one-fourth part of seven undivided eighth parts of township number one, in the third range, west from the east line of the State, in the county of Aroostook, said seven-eighths being subject to a mortgage from said Babcock, this day given to John Huckins, and I have paid said Babcock for such conveyance, the sum of eleven hundred and seventy-three dollars: all which has been done by me *for the equal benefit of myself and said Bragg*. Now if said Bragg shall repay to me one-half of said sum so paid by me, with interest from this time, then I am to convey to him one-half part of said undivided fourth part of said seven-eighths of said township, subject to the said mortgage, by good quitclaim and free from incumbrances under me, to convey as good a title as I have received.

"All the stumpage received on said seven-eighths part of said township is to be appropriated to the payment of said mortgage; and after it is paid, to the payment of the money advanced by me as aforesaid, and interest so far as one-quarter part is concerned, and necessary expenses to be paid by me, and the remainder received for such fourth part to be equally divided between said Bragg or assigns and myself. As soon as I shall from said stumpage, or otherwise, receive as aforesaid the sum due to me from said Bragg for his one-half of said fourth part, then I am to make a conveyance thereof, as aforesaid, to him or assigns."

The bill alleges, and the demurrer admits a performance by said Bragg, of all that was to be done and performed by him to entitle him to a conveyance.

Now there is no ambiguity in the language of the condition above recited. The joint interest of the parties in the original purchase, and that the obligor holds the estate for

their joint and common benefit, are expressly declared. Language more clearly establishing the relation of trustee and *cestui que trust* can hardly be imagined. Here is a clear and manifest recognition in writing, of a previously existing trust, but of one which could not have been enforced without such recognition, because its enforcement would be against the express words of the statute. Every fact necessary to create or establish a trust is precisely stated, the trust estate, for and on whose account, and when purchased, the purchase money of the same, and that it was advanced for the complainant, and that the land is held as security therefor, and the terms upon the performance of which the *cestui que trust* is to be entitled to a conveyance. All this is declared in writing, and, according to the entire weight of authority in England and in this country, establishes a trust.

In *Dale* v. *Hamilton*, 2 Phill. 266, (22 Eng. Ch. Cond. 266,) Hamilton and McAdam having purchased jointly certain real estate, at the instance of the plaintiff, by a memorandum signed by themselves, but to which the plaintiff was not a party, stated therein the purchase to have been made by them jointly, and that the plaintiff was to have one third of the profits arising therefrom, instead of commissions for purchasing, selling, surveying, or laying out the land into lots, but that he was to have no power or authority over the land, and that he should have no compensation till the whole was sold and paid for. The land having risen greatly in value, Hamilton and McAdam refused to recognize the interest of Dale in the speculation. Upon a bill filed by Dale, in which he sought for a sale of the land, and for the protection of his rights, Lord COTTENHAM remarks as follows: "There is this distinction between agreements and declarations of trust: in the one, it is the agreement itself, which is the origin of the interest, that must be in writing; in case of a declaration of trust, which is only the acknowledgment of a pre-existing interest, it is the evidence and recognition, and not the origin of the transaction, that must be in writing. Here the declaration recognizes a past transaction, because

the purchase had been agreed for before Hamilton became entitled to any share in it; and in this agreement between Hamilton and McAdam, they recognized Dale's right to have one-third of the profit to be produced by the sale of the land, after paying the expenses and interest on the purchase money. Now it would be the strangest thing in the world if, the statute being satisfied, which it is by finding this writing signed by the parties, the Court should not give relief to the party whom the document declares entitled to it. It is nothing that the plaintiff is no party to this declaration of trust; that is not required. A declaration of trust may acknowledge a right in another party, if it is signed by the party declaring that he is the trustee of another." So, "if upon an agreement for joint purchase, the conveyance is taken in the names of some but not all of the intended purchasers, the interests of the others may be established by any subsequent writing signed by the fiduciary partners, and which acknowledges or proves the existence of the trust; and this, although the agreement be that one purchaser shall find the money, and the other contribute his skill in purchasing and subsequently allotting and selling the land." Dart. on Vendors and Purchasers, 435.

In New York, by statute, all trusts must be created or declared by deed or conveyance, in writing. This, it will be observed, is a material variation from our statute, which does not seem to require the creation or declaration of the trust to be by deed. In *Wright* v. *Douglass*, 3 Selden, 564, RUG-GLES, C. J., in delivering his opinion, says:—"The statute prescribes no particular form by which the trust is to be created or declared. Under our former statute in relation to this subject, it was only necessary that the trust should be manifested in writing; and therefore letters from the trustee, declaring the trust, were sufficient. Such is the law of England. Our present statute requires that the trust should be created or declared by deed or conveyance, in writing, subscribed by the party creating or declaring the trust. But it need not be done in the form of a grant. A declaration of a

trust is not a grant. It may be contained in the reciting part of a conveyance. Such a recital in an indenture is a solemn declaration of the existence of the facts recited; and if the trustee and *cestui que trust* are parties to the conveyance, the trust is as well and effectually declared in that form as in any other."

It is clear, therefore, that here is a written declaration of a trust, equally valid and binding, as though the parties had entered into an agreement before the purchase was made, as in *Quackenbush* v. *Leonard,* 9 Paige, 334. Indeed, where, as in the present case, money is advanced by one on account of another, and the deed taken to the person so advancing as security, it seems that the conveyance is held to be in trust for the person for whose benefit the purchase was made. "Should B. advance the purchase money, but only on account of A., then A. is the owner in equity, and B. stands in the light of a creditor." Lewin on Trusts, 200.

The bond in and by which the trust between Paulk and Bragg is declared, was duly recorded before the conveyance of Paulk to the other defendants was made. "When such a trust is created or declared by an instrument in writing, the recording of it in the registry of the district where the land lies, shall be considered equal to actual notice thereof to all persons claiming under a conveyance, attachment or execution, made or levied after such recording. R. S., c. 91, § 33.

As the other defendants purchased after the bond was recorded, they come in subject to the equities between Paulk and the plaintiff. 2 Story's Eq. § 788.

Even if the bond were not to be regarded as an instrument to be recorded, still, according to the principles which govern courts of equity, the plaintiff would be entitled to a conveyance. That the plaintiff would be entitled, upon the facts set forth in the bill and admitted by the demurrer, to a decree for a conveyance from Paulk, is not to be questioned for a moment. The terms of the bond having been duly performed, the obligor is regarded in equity as the equitable owner

Bragg *v.* Paulk.

of the land, and the vendor is deemed to stand seized for his benefit.

The conveyance to the defendants Boynton and Bradley and Winn, was by deed of quitclaim, and for their security. In *Oliver* v. *Platt*, 3 How. 333, the Supreme Court of the United States decided "that a purchaser by quitclaim, without any covenants of warranty, is not entitled to protection as a purchaser for a valuable consideration, without notice, and he only takes what the vendor could lawfully convey." *Adams* v. *Cuddy*, 13 Pick. 460. A mortgage to secure prior indebtedness is not a purchase for a valuable consideration in equity. *Dickerson* v. *Tillinghast*, 4 Paige, 215. Still less can the other defendants, who hold the property as assignees, and in trust for such creditors as may become parties to the assignment, be held entitled to protection. Their condition cannot be viewed in a more favorable light than that of their assignor, to whose rights only have they succeeded.

The defendants have paid no money upon the strength of their conveyance, they have parted with no property upon the faith of any apparent interest which Paulk has conveyed them. They received the property either in trust for creditors, or as indemnity against preëxisting liabilities, and they have no equities which should entitle them to a preference over the plaintiff. Their deed gave them the "right, title and interest," of their grantor, and they can only be regarded as purchasers, for a valuable consideration, of such "right, title and interest." *Bassett* v. *Norworthy*, 2 White and Tudor's Leading Cases in Equity, 65. *Demurrer overruled.*

TENNEY, C. J., RICE, HATHAWAY and GOODENOW, J. J., concurred.