## SCHROEPPEL *vs.* CORNING.

Where in an usurious contract, the delivery of personal property by the borrower to the lender is a part of the transaction, the possession of such property by the lender is tortious from the beginning, and trover will immediately lie against him at the suit of the borrower without a demand or other evidence of a further act of conversion.

Accordingly, where the defendant lent money to the plaintiff, and to secure usurious interest, sold to him at the same time certain real estate at an exorbitant price, and for a part of the amount to be paid, received from the borrower at the time of the loan an assignment and delivery of several bonds and mortgages, *held* that the act of receiving them was a conversion by the defendant, and that trover by the borrower brought after six years from such delivery was barred by the statute of limitations. *Per Curiam,* WHITTLESEY, J., *dissenting.*

The law regards every thing done by a borrower, to obtain money upon usurious terms, as involuntary, and the result of constraint and compulsion. *Per* BEARDSLEY, C. J.

The law is the same where the possession of chattels is obtained from the owner by fraud; and in such cases, trespass, trover or replevin will lie without a demand. *Per* BEARDSLEY, C. J.

Receiving payment under a claim of right upon a security in the possession of the party receiving, but which belongs to another, is such an assertion of ownership as to amount to a conversion. *Per* BEARDSLEY, C. J.; WHITTLESEY, J., *contra.*

Where on a loan of money usury was exacted, by the lender inducing the borrower to purchase land of him at a price above its value; and it was a part of the transaction that the borrower should sell and deliver to the lender certain personal property, and secure the balance between the money and the price of the land on one side, and the personal property on the other, by the borrower's bond and mortgage, which was accordingly given; although such balance was less than the money actually advanced, the law deems the whole transaction usurious and void, and will not regard the transfer of the personal property as a sale or exchange. *Per* WHITTLESEY, J.

And where there was a written contract, prior to the completion of such an arrangement, the terms of which were fulfilled by the loan, the conveyance of the land and personal property and the giving of the bond and mortgage, it will not be regarded as a payment or satisfaction of the liability created by the antecedent contract, and be thus taken out of the law of usury. *Per* WHITTLESEY, J.

Where any part of an usurious contract remains executory, such part is usurious and void. *Per* WHITTLESEY, J.

And an usurious agreement is incapable of ratification. *Per* WHITTLESEY, J.

Where a usurious loan was connected with a sale of real property by the lender

Schroeppel *v.* Corning.

to the borrower, and the latter filed a bill in chancery to rescind the purchase on account of fraudulent representations by the borrower, and the bill was dismissed with liberty to bring another suit upon different grounds; *held* that the borrower might bring trover for personal property transferred by him as part of the usurious contract. *Per* WHITTLESEY, J.

Where the sale of personal property and the giving of a bond and mortgage by the borrower to the lender were parts of an usurious contract, and the lender obtained a judgment by default against the borrower on the bond, this does not preclude the latter from bringing trover against the lender for the personal property on the ground that the transfer was void for usury. *Per* WHITTLESEY, J.

Otherwise, if the suit on the bond had been litigated on the question of usury. *Per* WHITTLESEY, J.

In trover for personal property delivered under an usurious contract, the declaration must set forth that it was received by the defendant, *contrary to the statute concerning the interest of money;* and the omission of such statement, if objected to on the trial, will be fatal. *Per* WHITTLESEY, J.

TROVER, for the conversion of three bonds and three mortgages, brought of October term, 1844. Plea, not guilty, and the statute of limitations, with notice of special matter. The cause was tried in April, 1845, before WHITING, Cir. J.

The plaintiff proved a written agreement between himself and the defendant, dated the 26th of June, 1837, by which the latter agreed to loan to the plaintiff $7,500 for ten years, on annual interest, and to sell him certain real estate in Syracuse for certain prices mentioned, the plaintiff agreeing to assume the liens upon the property and to secure the balance by approved bonds and mortgages. On the 10th of July following, the arrangement was concluded. The defendant advanced to the plaintiff $7,500, and conveyed the real estate to him—the money and property amounting to about $23,000, and the plaintiff assigned to the defendant absolutely the three bonds and mortgages for the conversion of which the suit was brought, and which had been executed to himself as follows: One executed by A. Anderson, for $10,202; (but the attempt to recover for this was, in the course of the trial, abandoned;) one by Mather Williams, dated December 1, 1834, for $3,000, payable five years from date with annual interest; and one by William B. Kirk, dated 9th of June, 1836, for $2,600, with annual interest. After deducting the amount of these securities, and of

the incumbrances on the real estate which the plaintiff assumed, from the aggregate of the money loaned and the price of the real estate, there remained due the defendant $5,063, for which the plaintiff gave a bond and mortgage payable in ten years, with annual interest.

It was proved that Kirk had paid his bond and mortgage to the defendant and to a person to whom the defendant had assigned them. The first payment was to the defendant, on the 9th of June, 1838; and the assignment by the defendant was on the 21st of January, 1840. The final payment was June 9th, 1843. Williams made a payment to the defendant in December, 1839; and subsequently, in August, 1841, he paid the amount in full to H. Davis, after a decree of foreclosure at the defendant's suit. The defendant had assigned the decree to Davis on the 22d of July, 1840.

The plaintiff had filed a bill in the court of chancery against the defendant to set aside the contract for the purchase of the real estate, on the ground of fraudulent representations by the defendant. The defendant answered, and on the 12th of December, 1843, the bill was dismissed on a hearing upon pleadings and proofs, with costs, but without prejudice to another suit for the same object on other grounds.

The plaintiff, then, to establish that the whole transaction was a cover for an usurious loan, gave evidence to show that the plaintiff took the real estate at prices greatly above its value, and rested.

The defendant moved for a nonsuit on the grounds, among others, that no demand of a return of the bonds and mortgages had been proved; that the statute of limitations had attached against the cause of action before the suit was commenced; that the bonds and mortgages had been paid before the commencement of the suit; that they were assigned in payment of the prior contract; and that the plaintiff had not set forth in his declaration that the bonds and mortgages were converted by the defendant contrary to the provisions of the statute concerning usury, as required by 2 *R.*

*S.* 352, § 3. The motion was denied, and the defendant ex-
cepted.

The defendant gave in evidence the record of a judgment
in the supreme court, in his favor, against the plaintiff, on the
bond for $5,063, accompanying the plaintiff's mortgage before
mentioned, rendered in October, 1838, by default; and he then
examined witnesses as to the value of the real estate which he
had conveyed to the plaintiff. He requested the judge to
charge the affirmative of the propositions which he had submit-
ted on the motion for a nonsuit, together with many others
which were stated. The charge given was to the effect that
the plaintiff was entitled to recover the amount of the bonds
and mortgages of Kirk. and Williams with interest, provided
the jury found the contract to be usurious. The defendant's
counsel excepted. Verdict for the plaintiff for $6,847,65. The
defendant moves for a new trial on a bill of exceptions.

*J. Ruger*, for the defendant.

*G. F. Comstock & N. Hill, Jr.* for the plaintiff.

BEARDSLEY, Ch. J. Without looking at the cloud of points
made in this case, there is one objection which seems to me en-
tirely fatal to the action. The usurious contract, if such was
the true character of the agreement between these parties, was
made on or shortly previous to the tenth of July, 1837. By
that agreement the defendant, among other things, was to ad-
vance to the plaintiff, by way of loan or payment, the sum of
$7,500, the plaintiff, on his part, agreeing to assign and deliver
to the defendant, as his own property, or by way of security for
the amount to be paid by the plaintiff, the bonds and mort-
gages for which this action was brought. This agreement was
fully consummated on said tenth of July, the money being
then advanced and the securities assigned and delivered as
agreed between the parties; but the present action was not
commenced until October term, 1844, more than seven years
after the bargain had been executed in the manner stated.

Schroeppel *v.* Corning,

Now, conceding, as the plaintiff insists, that this transaction was usurious, so that the defendant thereby acquired no right whatever to these securities, still if what the defendant did at the consummation of the agreement, amounted to a conversion of them, the statute of limitations would seem to present an insuperable obstacle to a recovery in this case.

A conversion of property is an act of malfeasance, not of mere nonfeasance ; a positive wrong and not the mere omission of what was right. The manner in which possession of the property was acquired by the defendant in an action of trover, may be material with regard to the evidence of a conversion, for if the possession was rightful, some tortious use or disposition of the property, or a demand and refusal to deliver it, must be shown. But if possession was acquired wrongfully, that is always sufficient without a demand and refusal, or other evidence of a conversion. A wrongful taking or assumption of a right to control or dispose of property, constitutes a conversion. Indeed, any wrongful act which negatives or is inconsistent with the plaintiff's right, is *per se* a conversion. It is not necessary that the defendant should have made use of the property in any way. " Does he exercise a dominion over it in exclusion, or in defiance of the plaintiff's right ? If he does, that is in law a conversion, be it for his own or another person's use." (*Bristol* v. *Burt*, 7 *John.* 254 ; *Fouldes* v. *Willoughby*, 8 *M. & W.* 540 ; 1 *Ch. Pl. ed. of* 1837, *p.* 176 ; 2 *Stark. Ev. part* 2, *ed. of* 1842, *p.* 1155 ; 2 *Leigh's N. P.* 1477.)

The contract upon which these securities were received by the defendant being usurious, was wholly void, and he thereby acquired no right to them. (1 *R. S.* 772, § 5.) Nor was his possession, although by manual delivery from the plaintiff, a rightful possession. On the contrary, it was not only acquired in violation of positive law, but, as respects the plaintiff, was compulsory and oppressive. The law regards whatever is done to obtain money on usurious terms, not as a voluntary act, but as the direct result of constraint and violence on the part of the usurer. The borrower on such terms is the slave of the lender ; nay more, a slave in chains, and utterly incapable of resistance.

Schroeppel *v.* Corning.

As to the usurer, every thing is held to be oppressive and tyrannical, to which an unresisting and passive submission is yielded by his victim. It is on this principle alone that the law gives redress to one who submits to usurious exactions He is not looked upon as a free agent, nor as a violator of the law; and to such a case the maxims, *volenti non fit injuria,* and, *in pari delicto potior est conditio defendentis,* have no application. "The law," says Chief Justice Spencer, ( *Wheaton* v. *Hibbard,* 20 *John.* 293,) "considers the borrower rather as a victim than an aggressor. · The statute prohibits usury, in order to protect needy and necessitous persons from the oppression of usurers, who are eager to take advantage of the distresses of others, and who violate the law only to complete their ruin. In such a case the maxim of *potior est conditio defendentis* has never been applied." "It would be absurd," says the late Mr. Justice Story, "to apply the maxim *volenti non fit injuria,* to the case of a man who from mere necessity pays more than the other can in justice demand, and who has been significantly called the slave of the lender. He can in no just sense be said to pay voluntarily. And as to being *particeps criminis,* he stands *in vinculis,* and is compelled to submit to the terms which oppression and his necessities impose on him." (1 *Story's Eq. Juris.* 3d ed. § 302; see also *Clarke* v. *Shee, Cowp.* 197; *Holman* v. *Johnson, id.* 341; *Browning* v. *Morris, id.* 790; *Smith* v. *Bromley, Doug.* 696, *note; Bosanquet* v. *Dashwood, Cas. Temp. Talb.* 39; *Cowen & Hill's Notes to* 1 *Phil. Ev. p.* 1447.) These rules and principles are salutary and well settled. It is manifest, therefore, that the securities in question were not delivered to the defendant voluntarily, but were acquired by compulsion and wrong. They were exacted by the defendant for his own use and as his own property, and were held in exclusion and defiance of the plaintiff. In reason and sound sense, sustained by all the authorities on the subject, these acts must be held to constitute an actual conversion of the property. The plaintiff, therefore, might have brought suit on the very day when the securities reached the defendant's

Schroeppel v. Corning.

hands; but having waited more than six years from that time, the statute of limitations is a bar to a recovery.

It was urged, on the argument, that the defendant acquired a rightful possession of these securities, as they passed directly into his hands by delivery from the plaintiff himself, and therefore that no action would lie until demand and refusal to restore the property, or something amounting to an actual conversion had taken place. The remarks made by Chief Justice Nelson, in deciding the case of *Boughton* v. *Bruce*, (20 *Wend.* 235,) were referred to as authority on this point, and it must be admitted, that they afford some countenance to the argument. But that was an action of replevin in the *detinet*, not trover as this is. There may be a difference on this point, between these actions, as there is in some respects between trespass and trover. But whether this be so or not, the remarks made in that case cannot be taken as controlling in an action of trover.

*Tregoning* v. *Altenborough*, (7 *Bing.* 97,) was an action of trover for goods deposited to secure a usurious loan. It does not appear from the report of the case that any demand had been made, nor was the objection taken; the only point left to the jury was whether the goods had been deposited on a contract to pay more than the legal rate of interest for money advanced, which the jury found was the fact, and the plaintiff had a verdict. This was in the court of common pleas, and a subsequent case of the same character in the king's bench was disposed of in the same way, no objection being taken that a demand of the property had not been made. (*Hargreaves* v. *Hutchinson*, 2 *Adol. & Ellis*, 12.)

At common law a party who has paid money on a usurious contract, may recover the excess paid beyond the legal rate of interest, in an action of assumpsit, without having made a demand for a return of the money. (*Wheaton* v. *Hibbard, supra.*) No such action would lie in any case, if the payment could be regarded as made voluntarily, and certainly not without first demanding a return of the money. That the money may be so

recovered, without demand, shows therefore that it was received wrongfully.

Where goods are delivered on a contract of sale, which the seller was induced to enter into by the fraud of the purchaser, no right or title to the property is acquired by the latter. (*Earl of Bristol* v. *Wilsmore*, 1 *Barn. & Cress.* 514; *Read* v. *Hutchinson*, 3 *Camp.* 352; *Acker* v. *Campbell*, 23 *Wend.* 372; *Ash* v. *Putnam*, 1 *Hill*, 302; *Cary* v. *Hotaling*, *id.* 311.) Trover may, in such case, be brought by the seller without first making a demand of the goods, for the taking was tortious. (*Thurston* v. *Blanchard*, 22 *Pick.* 18.; *Lamb* v. *Clark*, 5 *id.* 193, 197.) Trespass or replevin is also maintainable under such circumstances. (*Cary* v. *Hotaling*, *supra*.) In this case, (*p.* 314,) Cowen, J. remarked, " It is said that the owner consented to the taking, and were that so, it would undoubtedly be a sufficient answer. But consent, in law, is more than a mere formal act of the mind. It is an act unclouded by fraud, duress, or sometimes even mistake," and he might have added, *usury*. Again, in the same case, (*p.* 315,) " That the owner's mere manual delivery of goods, will not save the deliveree from the imputation of trespass, is illustrated in the case of a bailment obtained with an intent to deprive the owner of his property. The bailee is considered as the taker, and may be convicted of larceny, under an indictment alleging that he *feloniously* stole, *took* and carried away the property, contrary to the owner's consent. The form of a sale, unless within the statute as to false pretences, saves him from the charge of *taking* in a criminal sense; but for all civil purposes there is no delivery any more than in the case of bailment. In other words, for the purpose of a civil suit, the sale is *void*; though for the purpose of a criminal prosecution it is voidable only." (*See also Ramsdell* v. *Morgan*, 16 *Wend.* 574.)

*Summersett* v. *Jarvis*, (3 *Brod. & Bing.* 2,) was an action of trover, brought against the assignees under a commission of bankruptcy issued against the plaintiff. They insisted that the plaintiff should deliver to them his books, which he accordingly did, and this action was brought to recover their value

It turned out on the trial that the plaintiff was not subject to the bankrupt laws, and although the books had not been demanded, a verdict was rendered in his favor. On a rule *nisi* to set aside the verdict, it was insisted that the plaintiff did not part with the books on compulsion, so that there was no conversion until a formal demand had been made. But the court said "that the defendants having taken the books when they were armed with the authority of assignees, the plaintiff must be deemed to have delivered them up on compulsion; so that the defendants were thereby guilty of a conversion; and that consequently the plaintiff's action was maintainable, without any formal demand on his part."

On the ninth of June, 1838, more than six years before the present action was commenced, a payment was made to the defendant on one of these bonds. Receiving this payment was a very decisive assertion of ownership, the payment being made to and received by the defendant for his own exclusive use and benefit. It necessarily negated all right on the part of the plaintiff. Although, if there had been no previous conversion of this bond, the receipt of payment upon it, in the character of owner, would have constituted a conversion, and consequently the statute of limitations would have been a bar to this action, so far as respects that obligation; still, I do not look upon the payment as of any consequence in this case. The defendant had induced the plaintiff, by what the law holds to be gross oppression, to make a transfer of these securities, and they were held by the defendant as his own property, and not in subordination to any right on the part of the plaintiff. Such a taking and holding seem to me quite as decisive assertions of property and right, as the act of receiving payment can be.

This was spoken of on the argument as an extreme case of usury, and if such was its true character we may greatly regret that the plaintiff should be remediless. After a delay of more than seven years, however, the law can hardly be reproached for closing its door against the plaintiff. The statute of limitations is a wise law, for there ought to be a period beyond

Schroeppel v. Corning.

which old subjects of contention should not be revived. Exceptions to the rule are only allowable where some substantial reason for them is shown. Nothing appears here to excuse the long delay which occurred in this case, if, indeed, in an action like this any exception to the operation of the statute is ever allowed.

In my view of this case the statute of limitations constitutes an absolute bar to a recovery, and therefore this verdict should be set aside

McKISSOCK, J. concurred.

WHITTLESEY, J. This case is one of considerable importance both in regard to the amount involved and the questions to be determined. The common case in the books is that of a loan of money, and the sale of stock, goods, or other property at a price beyond its value, extorted from the necessities of the borrower, and securities taken for the payment of the whole, embracing the money loaned and the price of the property sold. The agreement of the 26th of June seems to present just such a case, in writing. The defendant agrees to loan $7,500 for ten years, and to sell certain real estate at certain prices, and the plaintiff agrees to secure the balance after deducting the incumbrance on the real estate, by approved bonds and mortgages. Here is an agreement for a loan coupled with a sale of real estate, the whole to be *secured* by bonds and mortgages. It only remains to be shown by parol that the prices thus agreed to be paid for the real estate, were beyond its actual value, and that the agreement to pay such prices was extorted from the necessities of the plaintiff, to make it the precise case so often put in the books. The agreement of the 26th of June was not carried out in its details until the 10th July, and then not precisely according to the letter of the agreement. Thus, the plaintiff, instead of *securing* the amount of the money loaned, and the price of the real estate sold, by bonds and mortgages, giving his personal responsibility for the payment of the whole, as the agreement of June 26th would seem to con-

emplate, assigned to the defendant absolutely, and not in security, bonds and mortgages to a large amount, and only gave *security* and his own personal responsibility for the payment of $5,063. Hence in the completion of the arrangement the only instrument that was executory was this bond to pay $5,063, and the mortgage by which it was secured; the assignment of the three bonds and mortgages being executed instruments, nothing remaining to be done afterwards in regard to them.

This furnishes the defendant with facts to argue plausibly that as the arrangement was finally consummated, there was but a sale of land by the defendant for the plaintiff's bonds and mortgages, and that to the extent of those bonds and mortgages, the plaintiff not becoming personally responsible by any direct or collateral promise or covenant, the contract was closed and executed; and that it was only as to the balance of $5,063 which the plaintiff had given his bond to pay, if as to any thing, that usury could be predicated.

Two positions might thus perhaps plausibly be taken: 1. That the transaction was a sale, not a loan: 2. If a loan, that it was not usurious. But the whole matter in this aspect of the case has been submitted to the jury by a charge which in this respect was unexceptionable, and the jury have found that it was a loan and not a sale, and that it was an usurious loan, and that the lands were imposed upon the necessities of the plaintiff at prices above their actual value. Such a finding under such a charge relieves us from the necessity of examining the evidence to determine whether it was warranted by the proofs. We are here, upon a bill of exceptions, to assume as true all that was so proved, and hence to regard it as a matter of fact that there was an usurious loan. The whole arrangement appears to have been but one entire thing, though consummated by agreements which were partly executory and partly executed. It is idle to say that the bonds and mortgages were assigned in satisfaction or payment of a previous usurious loan. There had been no previous loan of any kind. There was an agreement for a loan, and the plaintiff was co-

Schroeppel v. Corning.

erced into an assignment of the bonds and mortgages before he could obtain the loan. He assigned these instruments as a part of the means of procuring the loan. It can hardly be said that an arrangement of which the usurious loan was so completely the keystone in its inception and consummation can be good in part and bad in part. It must be held, I think, an entire contract, of which if a part is illegal and void, the whole is void. (*Crawford* v. *Morrell,* 8 *John. R.* 253; *Van Alstyne* v. *Wimple,* 5 *Cowen's Rep.* 162.) The usury in this case consists in the excessive price of the lands imposed upon the plaintiff as a condition of making the loan; and the usurious interest consists in the excess of the price of the lands beyond their fair value. This usurious excess alike enters into the assignment of the bonds and mortgages transferred to pay a part of the price, and into the bond executed by the plaintiff to secure the payment of the balance. If there is usury at all, it pervades the whole transaction. If usury so pervades the whole transaction, then are all the instruments executed at the time— bonds, assurances and conveyances, and all other contracts, as well those executed as those executory, wholly void. They are void because the statute forbids the taking of more than seven per cent interest; and because it expressly makes void all bonds, assurances, conveyances, and all other contracts whereby there shall be reserved or agreed to be reserved or taken any greater interest than seven *per centum per annum.* (1 *R. S.* 772, §§ 2, 5.) Executory contracts are so completely void that if one pays a promissory note infected with usury, he can bring an action for money had and received to recover back the money at common law, aside from the remedy given by the statute. That he can bring such action at all is upon the ground that the contract is void. His recovery in the case of usury is, however, limited to the usurious excess, because the action for money had and received is an equitable action; and it is equitable that the borrower should pay the money actually loaned with lawful interest. (*Wheaton* v. *Hibbard,* 20 *John. Rep.* 290; *Palmer* v. *Lord,* 6 *John. Ch. R.* 101.) The max

im *potior est conditio defendentis* does not apply to contracts
or transactions made illegal by the law of usury.

If the assignment of these bonds and mortgages was wholly
void, as appears to be clearly declared by the act, then the title
did not pass from the plaintiff; and if he can maintain trover
at all he must recover the entire value of the thing, because in
trover the plaintiff goes upon his legal title. It is true that it
was held in *Fitzroy* v. *Gwillim*, (1 *T. R.* 153,) that the plain-
tiff could not recover in trover until he had paid the money
borrowed with lawful interest, on the assumed ground that tro-
ver was an equitable action. But this has been overruled, dis-
tinctly and decidedly, both in principle and result, it being held
in such cases that trover will lie because it is a strict legal ac-
tion. (*Tregoning* v. *Altenborough,* 7 *Bing. R.* 97 ; *Hinger-
ball* v. *Hutchinson,* 2 *Adol. & E.* 12.) See also *Ramsdell* v.
*Morgan,* (16 *Wend.* 574,) where all the cases are collected.

If this contract was wholly void there can be no pretence
that it has acquired any validity by subsequent ratification.
It is perhaps impossible that an usurious contract should be
rendered valid, while still unpurged of the usury, by any act
of ratification between the parties to it. There may be cases
where the rights of others supervene, that the defence will not
be permitted to be set up, but none which go upon the ground
of valid ratification between the same parties. There are some
cases referred to by Bronson, J. in *Doe* v. *Van Wyck*, (2 *Hill,*
522,) which I think may be put upon other grounds than rati-
fication. But if any principle of this kind is applicable to any
possible case, it can have no application here. The ratification
relied upon in this case is in the execution of the assignments
on the 10th of July, to carry into effect the contract of 26th of
June. At that time the plaintiff was under the original pres-
sure of want of the money; and a contract, whether void or
voidable, cannot be ratified while a party is under the pressure
of the same circumstances which induced him to enter into it.
(1 *Story's Eq.* § 345.)

Neither is there any ground for saying that the usurious
debt was paid by the assignment of the mortgages. The cre-

Schroeppel *v.* Corning.

ation of the debt, the conveyance of the real estate, the assign-
ment of the mortgages, and the execution of the bond, were
all simultaneous acts, and to be treated as part and parcel of
the same transaction, and made wholly void by the statute.

Though I have come to the conclusion that the assignments
were wholly void, and that consequently the title to the bonds
and mortgages never passed from the plaintiff, yet the posses-
sion of these instruments by the defendant was not tortious.
Such possession was delivered by the plaintiff who had the
right of property and might lawfully deliver, as the defen-
dant might lawfully receive possession. (*Boughton* v. *Bruce*,
20 *Wend.* 234.) The defendant being lawfully in possession,
a payment to him by the mortgagors would probably be a good
payment and protect them from again paying the plaintiff who
was all the time the legal owner. But these consequences, if
they resulted at all, would not result from any deference to any
fancied right of the defendant, but because the plaintiff had
put it in the power of the defendant by an apparently good as-
signment and delivery of possession to hold himself out as own-
er. If the mortgagors, relying upon such apparently legal
ownership, should pay to the defendant in good faith, it would
be inequitable in the plaintiff to repudiate such payment and
demand payment a second time. He would be estopped by his
own act which, though void, innocent third persons might rely
upon. Such third persons are protected not because the defen-
dant has any title by virtue of the assignment from the plain-
tiff, but because as between the plaintiff and such third persons
it is inequitable for the plaintiff to set up that he conveyed no
real title to the defendant, when he invested him with every
apparent evidence of legal title.

It is urged by the defendant that as the mortgagors are pro-
tected in their payments to him, and the plaintiff has done
nothing to repudiate the contract before such payments were
made, that the plaintiff cannot recover the money so paid in
this action of trover. I think it is true that as regards the pay-
ments made by the mortgagors to the defendant, the plaintiff
cannot recover in trover, but must resort to his action for money

had and received. But I do not understand that the verdict covers any such payments, but, on the contrary, that they are excluded from the damages given.

The defendant further urges that the plaintiff cannot recover in trover until after a demand of possession of the defendant and refusal to deliver. It is true that so long as these bonds and mortgages were in the possession of the defendant himself, as his original possession was not tortious, a demand would be necessary to maintain trover. (*Boughton* v. *Bruce*, 20 *Wend.* 234.) But the defendant had assigned both these mortgages, and both had been paid in full long before the commencement of this suit. A demand therefore after these acts would be an idle ceremony. A demand is usually necessary to furnish evidence of a conversion when the original taking was not tortious. If there has been an actual conversion a demand cannot be necessary. (*Tompkins* v. *Haile*, 3 *Wend.* 406.) It is claimed on the part of the plaintiff that the sale of these securities was a conversion in fact, dispensing with evidence of demand ; and it is usually held that a sale of chattels is evidence of conversion. (*Everett* v. *Coffin*, 6 *Wend.* 603.)

We have then this state of facts. The defendant has received upon the mortgages assigned to him certain payments from the mortgagors. For the payments so received it is conceded that damages cannot be recovered in this action. If the defendant had received from the mortgagors payment in full, it would seem to follow that recovery could not be had in this action. But instead of receiving such payment from the mortgagors the defendant has realized the whole money secured by the mortgages at once by a sale of them. This state of facts presents one of the most material and important questions in this cause. Whether trover will lie for the mortgages so sold to recover as damages their value at the time of the sale? The defendant insists that the action must be for money had and received, in which case the recovery would be limited to the usurious excess of interest. The plaintiff resorts to this action, which is strictly a legal one, so that his recovery may not be thus limited. To maintain trover the plaintiff must have

Schroeppel v. Corning.

property in the thing which is the subject of the action and the right of present possession; and there must be a conversion by the defendant. In this case the plaintiff has the property in the bonds and mortgages, because his assignment to the defendant was wholly void. He has the right of present possession, but while the mortgages were in the hands of the defendant, as they were there without wrong, he must make a demand of possession before he can assert his right by action. The sale of the mortgages was a conversion by the defendant upon which a right of action accrued without demand. The right of action having accrued, it is not affected or taken away by the subsequent payment of the mortgages to the assignees. The action of trover being not for the thing itself but for damages, and the right of action being vested by the act of conversion, cannot be affected by any subsequent disposition of the property. The judge was therefore right in ruling that this action could be maintained for the recovery of these bonds and mortgages. The amount of damages and the principle which governed was correct, as the damages only embraced the value of the mortgages at the time of their sale by the defendant, without including any sums received by the defendant thereon from the mortgagors.

It may be well in this connexion to consider the fact of conversion in connection with the defence of the statute of limitations. I think the limitation of suits for forfeitures does not apply to this case. (2 R. S. 298, § 31.) Though the assignment of these mortgages are made void by § 5 of the statute in relation to the interest of money, yet this suit is not for a *forfeiture* within the meaning of the provision above referred to. The action of trover is to be commenced within six years after the cause of action accrued. (2 R. S. 295, § 18.) The cause of action accrues in trover from the conversion of the personal property which is the subject matter of the action. When was the conversion in this case? The assignment and delivery of the mortgages to the defendant were in July, 1837, more than six years before the commencement of the suit. Kirk, one of the mortgagors, made a payment to the defendant on his mort-

gage June 9, 1838, more than six years before the commencement of the suit. Both the mortgages were assigned by the defendant within six years previous to the commencement of the suit. If the cause of action accrued *upon the assignment* to the defendant, then the statute bars the suit as to both mortgages. If it accrued from the time payments were made to the defendant on the mortgages, then the suit is barred as to one of the mortgages. If it accrued only from the time of the sale of the mortgages, then the action is not barred as to either of them. From what has been before remarked in the examination of this case, it follows that the time of the sale of the mortgages by the defendant was the time of conversion; and this is the time when the cause of action accrued.

But it is contended, on the authority of *Stafford* v. *Richardson,* (15 *Wend.* 302,) that though a suit could not be maintained until after demand or conversion, yet that the statute commenced running from the time the defendant took the mortgages into his possession. (*See, however, Murray* v. *Coster,* 20 *John. R.* 576 ; *Lillie* v. *Hoyt,* 5 *Hill,* 398.) The decision referred to is not applicable to this case. Trover is an action of tort, and there is no tort and therefore no cause of action until a conversion. The conversion being within six years before the commencement of the suit, the statute of limitations is no bar.

The judge was also correct in ruling that the bill in chancery filed by this plaintiff against the defendant in this cause, and the decree thereon, was neither a bar nor an estoppel to this suit. That bill was filed for a different purpose—on account of fraud in relation to the appraisement of the lands, and the decree was expressly without prejudice to any suit, either at law or equity, on any other ground.

I apprehend also that the judgment on the bond given by the plaintiff to the defendant as a part of the usurious transaction, is no bar to the present suit. That judgment was rendered in a suit commenced on the bond in the usual way; the defendant neglected to plead, and judgment was taken against him by default. The question of usury was not tried in that suit

As to the bond doubtless the suit is conclusive. That never can be impeached for usury, as it is merged in the judgment which concludes the parties as to the validity of the bond. If one in the same usurious contract executes several notes all of which are tainted by the usury, and he suffers a judgment to be recovered against him by default on one of the notes, that judgment cannot certainly prevent the setting up the defence of usury to the other notes, or be a bar in a proper case to a bill to cancel the other notes. If indeed the question of usury had been actually tried in the suit on the first note, it might then be a question whether a judgment rendered upon such trial would not be conclusive in regard to the other notes growing out of the same contract. (*See cases on this subject collected, Cowen & Hill's Notes to Phil. Ev. pp.* 826 *to* 835.) Here the question of usury was not tried in the suit on the bond; and the judgment in that suit is no bar to raising the question of usury in relation to other instruments executed as part of the same transaction.

The result of the examination of this case thus far has been to sustain the plaintiff in the general views he has taken of the case, and the circuit judge in his several decisions which have been the subject of exception.

There is one point clearly made by the defendant without out any argument offered in its support, and to which the plaintiff has not replied at all, that seems to me to deserve more attention than has been given to it, if indeed it is not of itself decisive of this case. In the provisions of the revised statutes under the title of "pleadings and set-offs" it is enacted that "If an action of trover be brought for any goods or other thing received contrary to the provisions of any statute, the plaintiff *shall* set forth in his declaration that such goods or other things were converted by the defendant contrary to the provisions of such statute, referring to the same as prescribed in the preceding sections. (2 *R. S.* 352, § 3.) The preceding section gives the plaintiff permission, without making it imperative, in debt or assumpsit for money received contrary to the provisions of any statute, to declare

generally that the defendant was indebted, by which an action accrued according to the provisions of the statute, naming it, as "according to the provisions of the statute regulating the rate of interest on money." These bonds and mortgages were clearly received by the defendant, if the contract was usurious, contrary to the provisions of the statute in relation to the interest of money; the second section of which prohibits the receipt of such goods or things in action, and the fifth section of which makes all conveyances and deposits of goods or other things void. (1 R. S. 772.) It seems to have been the object of many statutes to give a short mode of declaring in debt or assumpsit for the recovery of money or goods paid or transferred in violation of any law, to avoid the entangling and nice technicalities of special counts. Thus in the old act to prevent usury, an action of debt was given for money or goods received as an usurious premium. (2 R. L. 64, § 2.) So as to gaming. (1 R. L. 153, § 2.) These provisions seem to have been transferred generally to the revised statutes in the title above mentioned. (2 R. S. 351.) The scope of the former, and to a certain extent, of the present enactments, was to *permit* the plaintiff to declare in a short way by referring to the statute generally. The section above referred to in relation to the action of trover is, so far as I know, new, and it is not simply permissive, but imperative—"the plaintiff *shall* set forth in his declaration that the goods or things were converted contrary to the provisions of the statute." The plaintiff has not so set it forth in his declaration; the objection was duly taken and was overruled. It seems to me that this section applies to this case, and that its provisions have been overlooked and disregarded. I am not aware of any judicial construction of the section, but if applicable to this case it is fatal to the plaintiff's right of recovery. Not being able to perceive why it is not applicable, I am of opinion that a new trial should be granted for this cause.

New trial ordered.