Pierrepont, J.
—The question in this case is, whether the contracts upon which this action is founded were usurious ?
With the wisdom or the policy of the statute against usury we have nothing to do. The immorality and injustice of this statute were earnestly pressed upon us at the argument of this cause, as often before. Our duty is to declare the law as we find it, without regard to the hardship of its operation in a particular case, and without reference to its restraint upon trade or to its facility in enabling a borrower of money to escape the payment of his just debts. These are considerations proper to be addressed to the Legislature, but which the court cannot consider in the construction of the statute.
Under the law, as it has stood ever since 1831, this contract is usurious and void. Money was advanced by the defendant, upon which the plaintiff agreed to pay “ interest at the rate of seven per cent, per annum, from date, until the said amount is paid to said Hoppock, in New York,” and a commission of twelve per cent.
To secure this advance, interest and commission, the plaintiff transferred to the defendant policies of insurance upon the vessel and cargo, and also a bill of sale of the vessel.
Damage, caused by the perils insured against, was paid to the defendant by the underwriters, which amounted to more than the original advance by the said Hoppock. These moneys were paid over to the defendant in November, 1851, and May, 1852, and .this action was commenced immediately thereafter ; but, as the assignment and delivery of the bill of sale and policies to the defendant, were made in the year 1850, (more than a year before the commencement of this action,) the defendant contends in his fifth point, that:
“ Y. The action to recover money received upon an agreement alleged to be usurious, must be brought within one year after the transfer of the securities.”
The statute upon which this proposition is advanced, is in these words:
*163 “ Every person who for any such loan or forbearance shall pay or deliver any greater sum or value than is above allowed to be received, and his personal representatives may recover in an action against the person who shall have taken or received the same and his personal representatives, the amount of the money so paid or value delivered, above the rate aforesaid, if such action be brought within one year after such payment or delivery.” (R. S., 5th ed., vol. 3, p. 72, sec. 3.)
But this statute has no application whatever to the case before us; the transfer of securities collateral to a usurious loan, and made at the time of the advance of the money, is not a payment, and has never been so held. On the contrary, such transfer of collaterals is void, and the receiving of them is a conversion by the lender, for which trover will lie. (Schrceppel v. Corning, 5 Denio, 236; Schrceppel v. Corning, 2 Selden, 112, and 4 Oomst. 485.)
There is no ground for considering this agreement a contract in the nature of bottomry, nor as an agreement of any sort, where the entire capital was at absolute risk.
The judgment must be affirmed, with costs.
Robertson, J., concurred in this opinion.
Hoffman, J.
—There are two questions for consideration. Was the transaction between the parties usurious ? If so, can the present action be maintained ?
It is insisted on the part of the defendant, that the agreement was a bottomry bond, and thus any maritime interest was allowable; or if not strictly of that character, yet that the principal was at his risk; was not, at all events, to be repaid, and hence the transaction was legal.
No doubt, as stated by Justice Burnett in Chesterfield v. Janssen, (1 Atkyns, 140,) there may be cases of risk analogous to bottomry which will be free from the statute of usury, as there may be an apparent bottomry designed to evade it. And Chief Justice Lee observes, “ where there is an absolute hazard of the principal money, the case is *164 out of the statute. If the profit the lender is to have is for the hazard, not for the forbearance, the contract is not usurious.” (Ibid.)
As to bottomry. It is an essential ingredient of a bottomry bond where marine interest is reserved, that both principal and interest should be put at risk. The lender runs the maritime risk to earn the maritime interest. The lender bears the risk of a loss from the perils enumerated in the contract. The high interest, .usura maratima, is denominated in the Roman law, periculi pretium. Justice Story defines bottomry, a contract for a loan of money on the bottom of a ship at an extraordinary interest, upon maritime risks, to be borne by the lender, for the voyage, or for a definite period. The Draco, (2 Sumner, 157.) Th,e form of an instrument of bottomry varies in different countries. In some, it binds the owners personally.. In England and the United States, it does not do so; and if the terms render them responsible, they would be inoperative. They will only be liable for g,ny funds which may have come to their hands arising from the ship which was, pledged. The ship Virgin, (8 Peters, U. S. Rep. 538; 1 Haggard, 169.) The money is at the risk of the lender during the voyage, and the right to demand payment depends on the safe arrival of the vessel. (1 Paine C. C. Rep. 671.)
In the present case, the defendant, besides the pledge of the vessel in the instrument, received, first, a separate bill of sale of the vessel. In Robertson v. The United Insurance Company, (2 John. Ca. in Error, 250,) the insertion of the words “ bargain and sell the said ship to the said A. B.”in, an instrument, otherwise clearly a bottomry, was held not to affect it.
He received in the second place, a transfei; of the bills of lading of the cargo. Thus he became entitled to receive the freight from the shippers.
Next he took an assignment of a policy on the vessel, and of one on the freight, the premiums for which had been paid by Braynard, the borrower.
The effect of all'these instruments wa,s, that if tffe ves.r *165 sel arrived in safety without an intermediate bottomry, the lender would be repaid. If, as did happen, there was an intermediate bottomry, he had the extra value of the vessel, (as the second bottomry could supersede his own) and in addition, the freight earned from the shippers. If the vessel was lost by reason of the perils insured against, (being the perils which as lender on bottomry he was to assume,) he had the policy of insurance to resort to. If the freight was lost, he had the policy on the freight as a source of indemnity.
Can it be said that the principal money of the lender was here so at risk; so dependent upon the safety of the ship as to make it a case of maritime interest, on the ground of maritime peril ?
In Jennings v. The Insurance Company of Pennsylvania, (4 Binney, 246) there was what might be treated as a bottomry executed by the master to the plaintiff. Then a covenant, by Scribner, the owner, endorsed upon the bond, binding himself as principal therein, for payment of the sum therein mentioned, till such payment is fully and completely made. Two policies of insurance had been effected, one on the vessel, and one on the goods, for the use of the plaintiff, by his agents; and by a third instrument on the same sheet of paper with the bond, the owner engaged to pay the cost of premium and other charges accruing in making the insurance. The court held that the three instruments proved there, was not a bottomry. In Rucher v. Conyngham, (2 Peters, Ad. Rep. 299,) Judge Peters, in enumerating what is essential to constitute a valid bottomry, says : “ The sum loaned must be at risk, and there must not be a personal responsibility; that is, the money must be advanced on the faith of the ship, and at the sole risk of her loss or safety. It cannot be given as a double security, running along with a personal responsibility. The one excludes the other. The risk being solely confined to the ship, is the only justification allowed by the laws of all commercial countries for the maritime interest.”,
In Thorndike v. Stone, (11 Pick. 187,) the bond contained *166 various conditions and provisions of a special character, and there was a collateral mortgage to secure the fulfilment of the conditions of the bond, not for payment of the advance. ■ The question was whether it was a bottomry bond, or a usurious contract. It was held not to be the latter. “If the ship had been lost immediately after.she sailed, it is perfectly clear that the plaintiff would have lost all his usury.”
In the case of the Hunter, (Ware’s Rep. 251,) it was held, that a bottomry bond was not vitiated by the master-drawing bills of exchange upon the owners for the same sum. They -were not independent securities, payable at all events, but collateral, and subject to the same contingencies as the. bond. Until the vessel arrived in safety, nothing was payable on the bills, more than on the bond. These are all the authorities I have found where the question arose upon securities on vessels, in the nature of bottomry bonds. Some other cases may be noticed.-
In Tyson v. Rickard, (3 Harr. & John. 109,) the Court of Appeals of Maryland, lay down the general rule very explicitly, that a stipulation to repay the-principal in money, is not necessary to constitute a loan; it is enough if the principal is secured, and not Iona fide put at hazard; and it matters not what the nature of the security is, if it is sufficient.
In Pomeroy v. Ainsworth, (22 Barbour, 120,) it was stated as a general rule, that where the principal was Iona fide put at hazard, there was no loan; it was not usury to take more than legal interest. In the case, there was an agreement by which the only source for the repayment of the party’s advances, was the proceeds of the sales of logs and lumber which the other party was to cut and manufacture. Hall v. Daggett, (6 Cowen, 653,) and Quackenbush v. Leonard, (9 Paige, 346,) are cited, and are cases of the same character, plain cases, (as construed by the court,) of a bargain for reimbursement, exclusively out of the proceeds of the business or adventure.
It seems to me, from this review of the authorities, and *167 the principle which pervades and sustains these maritime contracts, that it is not possible to support the present engagement for the payment of marine interest. “ It is essential,” says Judge Betts, “ to the validity of a bottomry transaction, that the money lent should run the hazard of the voyage.” (The William and-Emmeline, 1 Blatch. and How., 66; the JYelson, 1 Haggard, 169.) How has that hazard, in this instance, been incurred ?
It enters into the idea and character of a bottomry, that the owners cannot personally be liable'for the demand, so that eventually, it may be recovered of them. It is not a mortgage with a covenant to pay the amount. If this liability is wanting, does it follow that there can be no extent of security for ultimate payment of the debt in all ordinary events, which will deprive the transaction of .its character of bottomry, and bring it within the statute of usury ? I cannot so understand it. It seems to me that the contract is this: the lender takes his extra interest as the premium or consideration for insuring the vessel, (as to the amount advanced,) against the perils specified. If he secures himself by a policy which the former procures and pays for, his peril is not the one which was paid for, and which alone justifies the marine interest.
Concluding, then, that there was usury in the contract, the next question is, can the moneys sued for be recovered in'the present action?
This question may be thus presented. The borrower, upon a usurious transaction, deposits with the holder various collateral securities. The event having occurred upon which the lender may resort to them, he collects upon them a sum of money not equal to the principal of his advances. Four days after such reception, an action is brought by the borrower to compel payment of such amount.
I understand the cases of Wheaton v. Hibbard, (20 Johnson’s Rep. 290,) Dix v. Van Wyck, (2 Hill’s Rep. 522,) of Schrceppel v. Corning, (5 Denio, 240; .10 Barbour, 576 ; 3 Selden, 108,) of Seymour v. Marvin, (11 Barbour, 87,) and *168 Mumford v. The American Life Insurance and Trust Company, (4 Comstock, 485,) to establish these propositions:
That when a party voluntarily pays a usurious loan, or executes a deed to discharge or secure it, he' cannot sustain an action to recover back the money or the property. That collateral securites placed in the-hands of the lender on a usurious transaction, may be recovered back in an action which would have been an action of trover under the former system; and that moneys received by the lender upon them, may be recovered in an action which would have been an action of assumpsit.
The collection of the money on collateral securities, is not equivalent, of itself, to a voluntary payment of a usurious loan. Pacts may show an acquiescence, recognition and assent, which may make it tantamount.
The third section of the statute respecting the interest of money, (1 R. S. 112,) qualifies the rule that money paid may not be recovered back so far as to allow the excess beyond legal interest to be recovered! and no more. The principal and legal interest may be retained.
The right to reclaim securities deposited as collateral, or to recover the money which may have been collected from them, may be barred like other demands, by the statute of limitation, and that statute will begin to run from the delivery of the securities.
The ground of the plaintiff’s claim in this case then, is : that he had an undoubted right to recover these securities the day before the money was received upon them; that he never assented to the collection of such-money, and has never ratified it since; that it was not a voluntary payment on his part, and hence that his action must be sustained.
I do not see what escape there is from this conclusion, and think that the judgment must be affirmed.
Ordered accordingly.